**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

NEOMEDIA TECHNOLOGIES, INC.,

       Plaintiff,

v.

DUNKIN' BRANDS GROUP, INC.,

       Defendant.

Judge

**Jury Trial Demand**

---

**COMPLAINT**

---

Plaintiff NeoMedia Technologies, Inc. for its Complaint for patent infringement against Defendant Dunkin' Brands Group, Inc., alleges as follows:

**PARTIES**

1. Plaintiff NeoMedia Technologies, Inc. ("NeoMedia") is a Delaware corporation with its principal place of business at 100 West Arapahoe Avenue, Suite 9, Boulder, Colorado 80302.

2. NeoMedia is the owner of record and assignee of US Patent No. 6,199,048 ("the '048 Patent") and US Patent 8,131,597 ("the '597 Patent") (collectively, the "Asserted Patents"). NeoMedia has and has had the exclusive right to enforce and collect damages for infringement of the Asserted Patents during all relevant time periods.

3. On information and belief, Defendant Dunkin' Brands Group, Inc. ("Dunkin'") is organized and existing under the laws of the State of Delaware, having its principal place of business at 130 Royall Street, Canton, MA 02021 and having a place of

1

business (a company-owned or franchise store) in numerous locations in this District, including one at 6660 Delmonico Dr., Colorado Springs, CO 80919.

## JURISDICTION AND VENUE

4. This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*., and more particularly 35 U.S.C. § 271.

5. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

6. Personal jurisdiction over the defendant is proper under C.R.S. § 13-1-124 and the United States Constitution because this action arises from the Defendant's commission of at least (a) transacting business and (b) committing the complained of tortious acts within this jurisdiction.

7. Venue is proper in this District under 28 U.S.C. §§ 1391 (b) and (c) and 1400 (b).

## BACKGROUND

8. NeoMedia is a leader in 2-dimensional ("2D") barcode technology and infrastructure solutions. NeoMedia's platform technology enables consumers easy and quick access to information by scanning mobile barcodes with camera phones.

9. NeoMedia provides a barcode scanner application, NeoReader®, which allows users to scan multiple types of 1-Dimensional ("1D"), such as Uniform Product Codes ("UPC") and 2D barcodes, such as Quick-Response Codes ("QR Codes").

10. NeoMedia's mobile barcode technology and platform has been used by brands to power their respective mobile barcode campaigns.

## THE PATENTS-IN-SUIT

11. On March 6, 2001, the '048 Patent, entitled "System and Method for Automatic Access of a Remote Computer Over a Network" was duly and legally issued by the United States Patent and Trademark Office ("the USPTO").

12. The claims of the '048 Patent were subjected to two ex parte reexaminations before the USPTO. The first reexamination was instituted on July 26, 2007 ("the 2007 Reexamination"), and concluded on June 9, 2009, when the USPTO issued an Ex Parte Reexamination Certificate (6867th). The second reexamination was instituted on September 20, 2010 ("the 2010 Reexamination"), and concluded on September 6, 2011, with the USPTO issued an Ex Parte Reexamination Certificate (8519th). A true and correct copy of the '048 Patent, and its two Ex Parte Reexamination Certificates is attached as Exhibit A.

13. On March 6, 2012, the '597 Patent, entitled "System and Method for Using an Ordinary Article of Commerce to Access a Remote Computer" was duly and legally issued by the USPTO. A true and correct copy of the '597 Patent is attached as Exhibit B.

14. The '048 patent has been asserted in several previous patent infringement lawsuits, each of which resolved by default judgment in favor of NeoMedia or by the accused defendants agreeing to enter license agreements with NeoMedia. These previous actions include: NeoMedia Technologies, Inc. v. Virgin, Inc. et al, Case No. 04 CV 00021, (N.D. Ill.); NeoMedia Technologies, Inc. v. LScan, Inc., Case No. 04 CV 2307 (E.D. Pa.); NeoMedia Technologies, Inc. v. AirClic, Inc., Case No. 04 CV 1692 (E.D.

Pa.), and NeoMedia Technologies, Inc. v. SpyderLynk, LLC, Case No. 12 CV 00939 (D. Co.).

15. NeoMedia has licensed the Asserted Patents to several providers of QR code services.

16. In addition to the licenses discussed above, NeoMedia has licensed its valuable intellectual property, including the '048 and '597 patents, to other companies including Kraft Foods, Microsoft, Progressive Insurance, and Mondelez Global LLC, Skechers USA, Tyson Foods, a global life science and high-tech materials company, a beverage manufacturer, a consumer packaged goods company, a Global 500 financial services company, a global manufacturer and marketer of high-quality food and beverage company, large quick service restaurants, and a major US automobile manufacturer.

## THE DEFENDANT DUNKIN'

17. According to its SEC filings, Defendant Dunkin' describes itself as "one of the world's leading franchisors of quick service restaurants ("QSRs") serving hot and cold coffee and baked goods, as well as hard serve ice cream," and has "over 17,400 points of distribution in 55 countries."

18. On information and belief, Defendant Dunkin' implements its marketing strategies at least by publishing or causing to be published advertisements featuring QR Codes to add value to its brand.

## DUNKIN'S AWARENESS OF THE ASSERTED PATENTS

19. Dunkin' has been expressly aware of the '048 Patent no later than January 31, 2013, when NeoMedia, through its counsel, notified the in house counsel for Dunkin' of the '048 Patent and offered Dunkin' the opportunity to license the patent.

20. Dunkin' has been expressly aware of the '597 Patent no later than January 31, 2013, when NeoMedia, through its counsel, notified the in house counsel for Dunkin' of the '597 Patent and offered Dunkin' the opportunity to license the patent.

21. Approximately eighteen additional correspondences and communications were directed to Dunkin', but Dunkin' has never responded to NeoMedia's communications, never entered licensing negotiations, and has never demonstrated why it believes a license is not necessary.

**FACTS REGARDING DUNKIN'S INFRINGEMENT**

22. QR Code advertisements and/or product packaging used by Dunkin' are examples of machine-readable codes that enable a user device to connect with a content server over the Internet by scanning a machine-readable code encoded with an index that is sent to a server and used to lookup the URL of the content server, which is then returned to the user device to enable it to connect with the content server.

23. As one example, the following QR code enables a user device to communicate the index to the server "http://dun.kn" to obtain the URL "http://www.ddaliencapture.com" of the content server.



24. As another example, the following QR code enables a user device to communicate the index to the server "http://dun.kn" to obtain the URL "https://itunes.apple.com/us/app/dunkin-donuts/id552020897?mt=8" of the content server.



25. Dunkin' does cause and has caused advertisements and/or product packaging to be published to the general public intending to strengthen the value of its brand, featuring at least one QR Code.

26. Dunkin' publishes and has published these advertisements and/or product packaging on behalf of its brand in order to instruct users to scan the QR Code provided by Dunkin' with a barcode reader.

### ALLEGATIONS RELATING TO WILLFUL INFRINGEMENT

27. Defendant Dunkin' has been aware of the '048 Patent since at least as early as January 31, 2013, when NeoMedia sent Dunkin' a letter offering to license NeoMedia's patent portfolio.

28. Defendant Dunkin' has been aware of the '597 Patent since at least as early as January 31, 2013, when NeoMedia sent Dunkin' a letter offering to license NeoMedia's patent portfolio.

29. Despite specific knowledge of the claims of the Asserted Patents, Dunkin' was objectively reckless in continuing to engage in actions that indirectly infringe the Asserted Patents. Dunkin' knew or should have known that there was an objectively high likelihood that its actions constituted infringement of a valid patent.

## COUNT I: INFRINGEMENT OF THE '048 PATENT

30. NeoMedia incorporates by reference the allegations set forth in paragraphs 1 through 29 of this Complaint as though set forth fully herein.

31. To the extent that Dunkin' has sponsored QR campaigns with any provider not licensed by NeoMedia, by making, using, selling, or offering for sale in this judicial district and elsewhere in the United States, without authorization or license from NeoMedia, QR Codes that are covered by one or more claims of the '048 patent, Defendant Dunkin' has been and is currently infringing the '048 Patent by inducement and/or contributorily in violation of 35 U.S.C. §271 (b), and/or (c).

32. Dunkin', through previous correspondence from NeoMedia, and based upon this Complaint, is actually aware of the '048 patent and what acts constitute infringing conduct.

33. With this knowledge, Dunkin' has intentionally taken active steps to cause, urge, encourage, or aid others' direct infringement of the '048 Patent with knowledge of that infringement, such as by advertising and distributing the Dunkin' QR Codes, including instructions on how to use the QR Codes, by which Dunkin'

specifically intended to cause, urge, encourage, or aid others to directly infringe the '048 Patent.

34. These active steps caused, urged, encouraged, or aided others to use the Dunkin' QR Codes in a manner that employs and/or embodies the claims of the '048 Patent by meeting each and every element of one or more of the claims, including putting the invention into service, i.e., controlling the system as a whole and obtaining benefit from it.

35. By making and/or using QR codes that indirectly link to a webserver, Dunkin' is making and/or using QR codes that are material to practicing the '048 Patent's invention.

36. Dunkin' QR codes that indirectly link to a webserver are especially made or especially adapted to indirectly link to a webserver.

37. Dunkin' QR codes that indirectly link to a webserver have no substantial non-infringing uses.

38. By making and/or using the QR codes that indirectly link to a webserver, Dunkin' specifically intended its customers to infringe the '048 Patent and knew that the customers' acts constituted infringement.

39. On information and belief, Dunkin's conduct is willful and deliberate.

40. As a direct and proximate result of Dunkin's acts of patent infringement, NeoMedia has been, and continues to be injured, and has sustained, and will continue to sustain, substantial damages in an amount not yet determined.

41. In addition, NeoMedia has and will continue to suffer irreparable harm as a direct and proximate result of Dunkin's acts of patent infringement.

## COUNT II: INFRINGEMENT OF THE '597 PATENT

42. NeoMedia incorporates by reference the allegations set forth in paragraphs 1 through 29 and 31 through 41 of this Complaint as though set forth fully herein.

43. To the extent that Dunkin' has sponsored QR campaigns with any provider not licensed by NeoMedia, by making, using, selling, or offering for sale in this judicial district and elsewhere in the United States, without authorization or license from NeoMedia, QR Codes that are covered by one or more claims of the '597 patent, Defendant Dunkin' has been and is currently infringing the '597 Patent directly, by inducement and/or contributorily in violation of 35 U.S.C. §271(a), (b), and/or (c).

44. Dunkin' has and controls a server computer that meets each and every element of one or more of the claims in the '597 patent, resulting in direct infringement of the '597 patent.

45. Dunkin', through previous correspondence from NeoMedia, and based upon this Complaint, is actually aware of the '597 patent and what acts constitute infringing conduct.

46. With this knowledge, Dunkin' has intentionally taken active steps to cause, urge, encourage, or aid others' direct infringement of the '597 Patent with knowledge of that infringement, such as by advertising and distributing the Dunkin' QR Codes, including instructions on how to use the QR Codes, by which Dunkin' specifically intended to cause, urge, encourage, or aid others to directly infringe the '597 Patent.

47. These active steps caused, urged, encouraged, or aided others to use the Dunkin' QR Codes in a manner that employs and/or embodies the claims of the '597

Patent by meeting each and every element of one or more of the claims of the '597 Patent, including putting the invention into service, i.e., controlling the system as a whole and obtaining benefit from it.

48. By making and/or using QR codes that indirectly link to a webserver, Dunkin' is making and/or using QR codes that are material to practicing the '597 Patent's invention.

49. Dunkin' QR codes that indirectly link to a webserver are especially made or especially adapted to indirectly link to a webserver.

50. Dunkin' QR codes that indirectly link to a webserver have no substantial non-infringing uses.

51. By making and/or using the QR codes that indirectly link to a webserver, Dunkin' specifically intended its customers to infringe the '597 Patent and knew that the customers' acts constituted infringement.

52. On information and belief, conduct by Dunkin' is willful and deliberate.

53. As a direct and proximate result of Dunkin's acts of patent infringement, NeoMedia has been, and continues to be injured, and has sustained, and will continue to sustain, substantial damages in an amount not yet determined.

54. In addition, NeoMedia has and will continue to suffer irreparable harm as a direct and proximate result of Dunkin's acts of patent infringement.

**REQUEST FOR RELIEF**

WHEREFORE, NeoMedia requests that this Court enter judgment:

A. Adjudging, finding and declaring that Dunkin' has directly infringed and indirectly infringed (both via induced infringement and contributory

infringement) the asserted claims of each of the Patents-In-Suit under 35 U.S.C. §271;

B. Adjudging, finding and declaring that infringement by Dunkin' is willful and deliberate;

C. Ordering Dunkin' to pay NeoMedia an amount that, as adequately as possible, compensates NeoMedia for infringement by Dunkin', in no event less than a reasonable royalty fee;

D. Ordering Dunkin' to pay court costs, pre-judgment interest, post-judgment interest, and attorneys' fees under 35 U.S.C. §§284 and 285;

E. Finding that this is an "exceptional" case pursuant to 35 U.S.C. §285, and awarding enhanced damages up to and including treble the amount of damages and the payment of attorneys' fees; and

F. Granting NeoMedia such other and further relief as is just and proper, or as the Court deems appropriate.

## JURY DEMAND

NeoMedia demands a trial by jury on all issues that may be so tried.

Dated: September 3, 2013                    Respectfully submitted,

                                                           /s/ Alexander J. Debski

                                                           David Berten (dberten@giplg.com)
                                                           Alexander Debski (adebski@giplg.com)
                                                           Global IP Law Group, LLC
                                                           123 N. Wacker Drive, Suite 2350
                                                           Chicago, IL 60606
                                                           T: (312) 241-1500
                                                           F: (312) 241-1522

13

Attorneys for Plaintiff NeoMedia
Technologies, Inc.